## THE WORD "DISTRIBUTION" HELD TO REFER TO THE TIME THE ASSETS WERE AVAILABLE.

Circuit Court of Cuyahoga County.

ELIZABETH A. CAMPBELL v. JANE C. McCUE ET AL.[*]

Decided, January 28, 1907.

*Estates—Interpretation of Wills.*

A testator directed his executors, after the termination of a life estate, to sell certain real estate and divide the proceeds, one-fourth each to four devisees, subject to the conditions and restrictions thereafter mentioned in the will; another clause in the will provided that if any of the heirs and legatees mentioned in the will should die before distribution of his estate and without leaving children, their shares should revert back to the estate and be equally divided amongst the remaining legatees; another clause provided that the share of certain legatees should be held in trust by his executors with power to invest the same in real estate, of which the legatees were to have the use during their natural lives and at their deaths to pass to their children in such manner as they, by will, or as

---

[*]Affirmed without opinion, *Campbell* v. *McCue et al*, 78 Ohio State, 427; former judgment adhered to without opinion, 79 Ohio State, 445.

the law might direct. The executors having sold the real estate at the termination of the life estate, divided the proceeds, and invested the share of two of the devisees jointly in other real estate, and one of the devisees on whose behalf said last named real estate was purchased having died without children but leaving a will by which she attempted to dispose of her interest in said property; *Held*:

1. The word distribution as used in testator's will did not mean the final settlement of the estate, but referred to the time when the assets became available through being divided at the termination of the life estate, and the devisees acquired title at that time.

2. Under the third item of the will an absolute estate was granted to each of the devisees named therein subject to be divested as to each by their death leaving children; therefore one of them dying without children had a right to dispose of her interest by will.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The plaintiff represents that she is the owner of an undivided one-sixth part of certain real estate, described in the petition, and that the several defendants are owners of the remaining five-sixths parts of the same. The defendant, Charles Thomas Manahan, by his cross-petition claims to be the owner of one-sixth of the same premises, and both of these parties pray for a partition of the premises.

The fact is, that the rights of all the parties depend upon the true construction of the will of Charles M. Campbell, deceased. He died testate in 1872, leaving his widow, Ann Campbell, and three children, to-wit, Henry M. Campbell, Elizabeth Campbell and Jane Cecelia McCue, and a grandson, the defendant, Charles Thomas Manahan, who was the only child of a deceased daughter of the testator. The son of the testator, Henry M. Campbell, is not now living, and the plaintiff is his only heir at law, and is entitled, if entitled to anything, to whatever rights her father would be entitled to, were he now living. The said Charles M. Campbell by his will disposed of a considerable estate, including real estate in the city of New York. By the second item of his will he provided among other things the following:

"My beloved wife Ann shall have all my New York real estate for her own use and benefit so long as her natural life shall last."

The third item of his will reads:

"It is my will that my executors, hereinafter named, at the death of my said wife, Ann, sell all my New York real estate * * * and divide the proceeds of the sale in the manner following viz: one-fourth part to my son Henry M. Campbell and one-fourth part to my daughter Elizabeth Campbell and one-fourth part to my daughter Jane Cecelia McCue and one-fourth part to my grandson Charles Thomas Manahan, with the restrictions and conditions hereinafter mentioned."

The testator's widow died in 1881 and the son, Henry M., died in 1888. The daughter, Elizabeth, died testate and without issue in 1903. After the death of Ann, the executors sold the New York real estate and delivered to Henry M. his one-fourth part of the avails of such sale, and invested for Charles Thomas Manahan in some property (not that described in the petition), one-fourth part of the estate which was to be held for him, and the remaining one-half of the avails of such sale was invested in the real estate described in the petition, for the defendant, Jane Cecelia McCue, and her sister, now deceased, Elizabeth Campbell, to the extent that each had an interest in the avails of this sale. The deed to this property was made to John D. Thompson, trustee, he being the only executor who qualified.

In 1895, Thompson resigned as such executor and the defendant, Thomas W. McCue, was appointed to succeed to the trust, and Thompson, as trustee, conveyed to the said Thomas W. McCue, as trustee, the real estate in question. By the terms of the will of the said Elizabeth Campbell, her interest in this real estate was devised to the defendant, Jane Cecilia McCue, for life and at her death to her children. The real question in issue here is whether Elizabeth Campbell had any such interest in this real estate as that she could dispose of it by will, and as has already been said, this depends upon the construction of the will of Chas. M. Campbell.

As bearing upon the question here under consideration attention is called to the fifth item of said *last named* will which reads:

"It is my will that if any of my heirs and legatees herein mentioned should die before distribution of my estate and with-

out children, their shares revert back to my estate and be divided equally amongst the remaining legatees.''

Contention is made here that the word "distribution" as used in this item, refers to the time when the estate shall be finally settled, and each legatee and devisee shall receive his or her share of the estate. We do not understand the word to be used in this sense, but rather in the sense of referring to the time when the avails of the sale of the New York real estate should be divided, as provided in the sixth item of the will. This item reads in part, as follows:

"It is my will that my executors herein named hold in trust or invest the bequests herein made to my two daughters Elizabeth and Jane Cecelia and my grandson Charles Thomas Manahan, as follows: They may invest each of said legatees' share of my estate in any real estate that they may think advantageous and prudent for the use and benefit of each one respectively of said legatees to have and to use the same during their natural life and at their death said real estate to pass to their children in such a manner as my said legatees may will or as the law may direct as the case may be.''

It will be noticed that it was not contemplated by the testator that joint investment for these three parties was necessarily intended, but they were authorized to invest the share of each in such wise as they should think most advantageous and prudent for the use of each. As a matter of fact they did not invest for the three jointly, but invested in the real estate here in dispute for the benefit of Jane Cecelia and Elizabeth only. If this construction of the word "distribution" as used in this item is correct, nothing more need be said as to this item, and we come then to consider the rights of the legatees and devisees under the third and sixth items. But for the concluding clause in the third clause there can be no doubt that each of the parties named in that item would have an absolute estate in the property therein named, but this concluding clause "with restrictions and conditions, hereinafter mentioned," draws our attention to the sixth item to ascertain what those restrictions and conditions are, and we find that the property in which the in-

vestment was to be made, they were to have and use during their natural life and at their death said real estate was to pass to their children in such manner as the law may direct, as the case may be.

Had Elizabeth Campbell died intestate, leaving one or more children, or had she died testate, leaving one or more children, to any one or more of whom she had devised her interest in this property, there would be no difficulty in this case, but, as has already been stated, she died without children and she devised this estate to another. Had she any estate to devise? If not, it is clear that the heirs at law of Charles M. Campbell became at the death of Elizabeth, the owners of one-half of this real estate, that is to say of *the* one-half which during the lifetime of Elizabeth was to be used for her sole use and benefit, and in that event, the plaintiff would be entitled to the partition which she asks, as would also the defendant, Charles T. Manahan. The contention on the part of the plaintiff and Manahan, is that as to this fractional part, what remains after the death of Elizabeth, is not disposed of by the will of Charles M. Campbell. It is said that it is clear that Elizabeth had only a life estate in the property in any event. The property itself was never owned by Charles M. Campbell, but it was purchased with the avails of the sale of property which he owned, and which he by will had directed to be so invested, and which so far as the rights of the parties here are concerned, must be treated as property of which he was the owner at the time of his death, and the question still remains whether Elizabeth had anything but a life estate in the property.

Section 5970, Revised Statutes of Ohio, reads:

"Every devise of lands, tenements, or hereditaments in any will hereafter made, shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate."

It is a well settled rule that the presumption is that where one undertakes to dispose of his estate by will he did not intend to die intestate as to any of his property, unless it is clear

by the terms of the will that such was his intention. Can it be doubted here that the testator intended by this will to dispose of his entire estate? So far as his New York property is concerned, and it is that with which we have to deal, he has provided that it shall be sold, that the avails shall be disposed of in the manner pointed out in the will, and as to the parties who are to be benefited by the avails of such sale, it is provided, that aside from the share of Henry, it may be invested. As to Elizabeth's portion, it was invested in the undivided one-half of the real estate in question. By the terms of the sixth item of the will, she was in any event to have a life estate. She would have had an absolute estate but for the last clause of the third item, and but for the provision made, as to what should be done with her property in case she died leaving children. No provision is made as to what shall be done with her part in case she died without children as she did, and we think that so dying the estate was a fee simple in her. We think so because the testator seems clearly to have undertaken to dispose of his entire estate, and unless she had an estate in fee simple, he did not dispose of his entire estate. We think so because the entire scheme of the will seems to be to provide for his several children and their descendants, providing they shall leave children, and he does not seem to have concerned himself as to what should become of the share of any one of them who died without children.

In the case of *Davis* v. *Corwine*, 25th O. S., p. 669, as to certain personal property which was bequeathed to a widow, in these words, "I give, devise and bequeath unto my beloved wife, Caziah Davis, all my personal property and real estate, wheresoever situated of which I shall be seized and possessed, or to which I shall be entitled at the time of my decease, to have and to hold the same unto her the said Caziah Davis, and to her use for and during her natural life," the court held that this gave to Caziah Davis not only the absolute ownership of the real estate but also of the personal property. On page 675, in the opinion the court uses this language:

"He makes a disposition of enough of his estate to pay debts, funeral expenses, and costs of administration, and then declares

that he gives, devises and disposes of the 'residue of his estate and property as follows.' * * * Unless the wife took an absolute property in the personal estate, the testator utterly failed to do what he professed and intended to do. And this could hardly have happened from mere forgetfulness or inadvertance; for, in the subsequent parts of the will, he makes particular and detailed dispositions of the remainders in the real estate, but makes no mention of any remainder, or other interest in expectancy, in the personal property.''

So here, this testator made no disposition of any remainder of the avails of the sale of the New York property, except where the first taker died, leaving children. And surely it can not be said that this was because of forgetfulness, for he remembered all about the property, and he know and directed just what should be done with it, not only during the lifetime of any one of the parties named, but also upon the death of such one as should die leaving children.

It seems to us that by fair construction of the whole terms of this will it must be held that under the third item of the will an absolute estate was granted to each of the parties named therein, subject to be divested as to each of the three, Manahan, Mrs. McCue and Elizabeth Campbell, upon the death of either, leaving children. Miss Campbell having died without issue, her estate was never divested. She was, therefore, the absolute owner of it at the time of her death, and could dispose of it by will. It follows that the petition of the plaintiff, and the cross-petition of Charles T. Manahan must be dismissed.